**BAKER HUGHES INCORPORATED,**
**Appellant**

v.

**Robert E. BROOKS, Appellee.**

**No. 14–12–00534–CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

June 4, 2013.

---

John Daniel Long, Matthew Scott Veech, William R. Sudela, Houston, for Appellant.

Marc S. Whitfield, Gregory N. Jones, Jeremy James Sanders, Houston, for Appellee.

Panel consists of Justices FROST, CHRISTOPHER, and JAMISON.

## OPINION

MARTHA HILL JAMISON, Justice.

This appeal asks whether an individual who signs a contract on behalf of a Delaware corporation that has forfeited its corporate charter concedes personal jurisdiction in Texas under the contract's forum selection clause. Baker Hughes Inc. sued Robert E. Brooks on a promissory note that he signed as president of Delphi Consulting, Inc. The trial court granted Brooks's special appearance and dismissed Baker's Hughes's lawsuit. We affirm.

## Background

The parties generally agree on the underlying facts pertinent to this appeal. As president of Delphi, Brooks signed both a settlement agreement—settling a dispute between Delphi and BJ Services Company, U.S.A. (a Baker Hughes subsidiary)—and a promissory note required by the settlement agreement. In the promissory note, Delphi promised to pay Baker Hughes $123,302.04 in 24 monthly installments of $5,464.82 each, beginning on January 31, 2011. The note also contained a forum selection clause stating that the "venue for any dispute concerning this note shall be in Harris County, Texas." [1]

Delphi made the monthly payments through September 30, 2011, but on the due date for the October installment, Delphi informed Baker Hughes that it would not be able to make the payment. In November, Baker Hughes advised Delphi that it was in default on the note. On December 21, 2011, Delphi sent a check for $5,464.82, but on December 22, Baker Hughes sent a letter to Delphi accelerating all payments due under the note as authorized in the note.[2] When Delphi did not pay the full amount owed, Baker Hughes filed suit against Brooks on January 13, 2012 in Harris County, Texas.[3]

On February 16, 2012, Brooks filed a special appearance contesting personal jurisdiction over him in Texas. In the special appearance and accompanying affidavit, Brooks, a Louisiana citizen, described in detail his connections with Louisiana and his lack of appreciable contact or connection with Texas. Although the settlement agreement and promissory note identified Delphi as a Louisiana corporation, Brooks states in his special appearance and affidavit that Delphi is incorporated in Delaware. In his special appearance, Brooks further states that "[w]hen suit was filed, it was learned that Delphi Consulting had fallen out of good standing in the State of Delaware; however, it has been reinstated and is now in good standing." The record also contains a certification from the Delaware Secretary of State explaining that "Delphi Consulting, Inc." was incorporated in that state in 1988 and was in good standing (with all franchise taxes paid) as of February 7, 2012.

In its response to the special appearance, Baker Hughes argued that because Delphi had forfeited its Delaware corporate charter by failing to pay franchise taxes prior to execution of the settlement agreement and note, Brooks effectively became a party to the contract and should be held to the forum selection clause contained therein. The trial court granted Brooks's special appearance and dismissed the lawsuit. The parties renew their arguments on appeal.

## Standards of Review

■ Determining whether a trial court has personal jurisdiction over a defendant presents a question of law subject to de

---

1. The settlement agreement contained a substantially similar forum selection clause.

2. In his brief, Brooks explains that the interruption in payments was caused by an interruption in the sale of natural gas and that Delphi told Baker Hughes that as soon as sales resumed, Delphi's payments would resume. Brooks also asserts that Delphi tendered to Baker Hughes both the amount required to cure the one-month default and the subsequent month's installment. In order to

resolve this appeal from the grant of a special appearance, however, we need not consider the merits of the underlying action or possible defenses.

3. In its Original Petition, Baker Hughes named as defendant, "Robert E. Brooks d/b/a Delphi Consulting, Inc." It then used the name "Delphi" throughout to reference Brooks.

novo review. *BMC Software Belg., N.V. v. Marchand,* 83 S.W.3d 789, 794 (Tex.2002). The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident within the provisions of the Texas long-arm statute. *Id.; Cerbone v. Farb,* 225 S.W.3d 764, 766–67 (Tex.App.-Houston [14th Dist.] 2007, no pet.). The burden then shifts to the nonresident defendant to negate all bases of personal jurisdiction asserted by the plaintiff. *Moki Mac River Expeditions v. Drugg,* 221 S.W.3d 569, 574 (Tex.2007).

■ Trial courts frequently must resolve fact questions before deciding jurisdictional issues. *BMC Software,* 83 S.W.3d at 794. When, as occurred here, the trial court does not file findings of fact and conclusions of law, all facts necessary to support the trial court's ruling and supported by the evidence are implied in favor of the trial court's decision. *Id.* at 794–95. When the appellate record includes the reporter's record, if any, and the clerk's record, parties may challenge the legal and factual sufficiency of these implied findings. *Id.* at 795. If the appellate court determines that the trial court's findings are supported by sufficient evidence, or if the material facts are undisputed, then the appellate court decides as a matter of law whether those facts negate all bases for personal jurisdiction. *Id.* If evidence supports the implied findings of fact, we must uphold the trial court's judgment on any legal theory supported by the findings. *Aduli v. Aduli,* 368 S.W.3d 805, 814 (Tex. App.-Houston [14th Dist.] 2012, no pet.) (citing *Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex.1990)).

■ Texas courts may not exercise personal jurisdiction over a nonresident defendant unless federal due process requirements and the Texas long-arm statute are satisfied. *See* Tex. Civ. Prac. & Rem.Code § 17.042(1); *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 412–13, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Texas courts may exercise jurisdiction over a nonresident defendant if the Texas long-arm statute authorizes the exercise of jurisdiction and the exercise of jurisdiction is consistent with federal and state due process guarantees. *Max Protetch, Inc. v. Herrin,* 340 S.W.3d 878, 884 (Tex.App.-Houston [14th Dist.] 2011, no pet.) (citing *Moki Mac,* 221 S.W.3d at 574).

*Discussion*

■ The only basis for personal jurisdiction Baker Hughes alleges in this lawsuit is that Brooks signed a settlement agreement and a promissory note containing provisions mandating Texas as the forum for deciding any disputes under the instruments. A mandatory forum selection clause is one of several ways a party may expressly or impliedly consent to personal jurisdiction within a forum. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 473 n. 14, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Tri–State Bldg. Specialties, Inc. v. NCI Bldg. Sys., L.P.,* 184 S.W.3d 242, 248 (Tex.App.-Houston [1st Dist.] 2005, no pet.). Forum-selection clauses are generally enforceable and presumptively valid. *In re Laibe Corp.,* 307 S.W.3d 314, 316 (Tex.2010) (per curiam).

Baker Hughes acknowledges that Brooks signed the settlement agreement and promissory note in his capacity as president of Delphi and not in his individual capacity. Baker Hughes, however, points to authority indicating that when an individual executes a contract purportedly as an agent for a principal, knowing or with reason to know that the purported principal does not possess legal capacity to enter the contract, the purported agent in effect becomes a party to the contract and is liable for any breach thereof. *See, e.g., Marrocco v. Hill,* No. 14–10–01077–CV,

2011 WL 5009489, at *4 n. 4 (Tex.App.-Houston [14th Dist.], pet. denied) (mem. op.); *Carter v. Walton*, 469 S.W.2d 462, 471 (Tex.Civ.App.-Corpus Christi 1971, writ ref'd n.r.e.); Restatement (Third) of Agency § 6.04 (2006).

Baker Hughes further points out that at the time Brooks executed the instruments on behalf of Delphi, Delphi's corporate charter had been forfeited for failure to pay franchise taxes. Delphi is incorporated under the laws of Delaware, so we look to the laws of Delaware to determine whether Delphi had the capacity to enter a contract at the time of execution. *See* Restatement (Third) of Agency § 3.04(2) & cmt. D (2006); *cf. Miller Mgmt. Co. v. State*, 140 Tex. 370, 373, 167 S.W.2d 728, 730 (1943) ("The question of whether a foreign corporation continues in existence, after the surrender of its charter, for the purpose of pending suits is to be determined by the statutes and laws of the State in which the corporation was created."); *Pellow v. Cade*, 990 S.W.2d 307, 312 (Tex.App.-Texarkana 1999, no pet.) ("The capacity of a foreign corporation to defend a suit is determined by the laws of the state in which the corporation is created.").

Under Title 8, section 510 of the Delaware Code, if a corporation under the laws of that state neglects to pay required franchise taxes, its corporate charter "shall be void, and all powers conferred by law upon the corporation ... declared inoperative." Del.Code tit. 8, § 510.[4] Baker Hughes argues that Delphi's failure to pay franchise taxes for seventeen years was not "inadvertent." Under Delaware law, the fact a corporate charter was forfeited for inadvertent failure to pay franchise taxes does not render the officer who signed the contract for the corporation personally liable absent knowledge of the forfeiture. Del.Code tit. 8, § 312; *Plummer & Co. Realtors v. Crisafi*, 533 A.2d 1242, 1245 (Del.Super.Ct.1987). Baker Hughes also contends that Brooks, as president of Delphi, either knew or should have known that Delphi had failed to pay its franchise taxes for several years preceding execution of the settlement agreement and promissory note.[5]

The very statute and case Baker Hughes relies upon, however, further explain that when a corporation renews and

---

4. Section 510 reads in its entirety as follows:

    **§ 510. Failure to pay tax or file a complete annual report for 1 year; charter void; extension of time**

    If any corporation, accepting the Constitution of this State and coming under Chapter 1 of this title, or any corporation which has heretofore filed or may hereafter file a certificate of incorporation under said chapter, neglects or refuses for 1 year to pay the State any franchise tax or taxes, which has or have been, or shall be assessed against it, or which it is required to pay under this chapter, or shall neglect or refuse to file a complete annual franchise tax report, the charter of the corporation shall be void, and all powers conferred by law upon the corporation are declared inoperative, unless the Secretary of State, for good cause shown, shall have given further time for payment of the tax or taxes or the comple-

tion of an annual franchise tax report, in which case a certificate thereof shall be filed in the office of the Secretary of State stating the reason therefor. On or before November 30 in each year, the Secretary of State shall notify each corporation which has neglected or refused to pay the franchise tax or taxes assessed against it or becoming due during the year or has refused or neglected to file a complete annual franchise tax report, that the charter of the corporation shall become void unless such taxes are paid and such complete annual franchise tax report is filed on or before March 1 of the following year.

    Del.Code tit. 8, § 510.

5. Brooks contends that he only learned of the fact Delphi's corporate charter had been forfeited when Baker Hughes filed suit against him personally on the promissory note.

revives its corporate charter, any acts taken by its officers and agents (including entering into contracts on behalf of the corporation) during the time of forfeiture are thereby validated as acts of the corporation and only the corporation itself shall be liable thereon. Del.Code tit. 8, § 312(e); *Plummer & Co.*, 533 A.2d at 1245. Section 312(e) expressly provides:

Upon the filing of the certificate [of renewal or revival] the corporation shall be renewed and revived with the same force and effect as if its certificate of incorporation had not been forfeited or void pursuant to this title, or had not expired by limitation. **Such reinstatement shall validate all contracts,** acts, matters and things made, done and performed within the scope of its certificate of incorporation by the corporation, its officers and agents during the time when its certificate of incorporation was forfeited or void pursuant to this title, or after its expiration by limitation, with the same force and effect and to all intents and purposes as if the certificate of incorporation had at all times remained in full force and effect. All real and personal property, rights and credits, which belonged to the corporation at the time its certificate of incorporation became forfeited or void pursuant to this title, or expired by limitation and which were not disposed of prior to the time of its revival or renewal shall be vested in the corporation, after its revival and renewal, as fully and amply as they were held by the corporation at and before the time its certificate of incorporation

became forfeited or void pursuant to this title, or expired by limitation, and the corporation after its renewal and revival shall be as exclusively liable for all contracts, acts, matters and things made, done or performed in its name and on its behalf by its officers and agents prior to its reinstatement, as if its certificate of incorporation had at all times remained in full force and effect.

Del.Code tit. 8, § 312(e). (Emphasis added)

The record here contains evidence that Delphi renewed its corporate charter prior to the filing of Brooks's special appearance. Baker Hughes filed its original petition on January 13, 2012. Citation was perfected on or about February 1, 2012.[6] A certificate from the Delaware Secretary of State confirms Delphi's corporate charter was in good standing and all required franchise taxes had been paid as of February 7, 2012. Brooks filed his special appearance on February 16, 2012. Similarly, in *Plummer & Co.*, suit was filed on December 5, 1983, and a certificate for revival was filed on January 13, 1984, prior to the defendants' filing a motion to dismiss for want of personal jurisdiction. 533 A.2d at 1244–45. In keeping with the mandatory language of Delaware Code, title 8, section 312(e), the court held that even though the renewal or revival occurred after suit was filed, the fact that the charter had been forfeited at the time the contract was signed was insufficient to establish that the signatory on the contract was a proper party in his individual capacity. *Plummer & Co.*, 533 A.2d at 1245–46.[7] As in *Plum-*

---

6. An affidavit in the record from the process server indicates that Brooks's "Agent" signed for the citation and attached documents on February 1, 2012. Brooks has not challenged receipt of proper service in this case.

7. The court in *Plummer & Co.* went on to examine whether the corporation was "mere-

ly a shell" for the individual defendants, who without the corporate shield had numerous contacts with Delaware. 533 A.2d at 1246. The court concluded that the corporation was indeed just a shell and personal jurisdiction over the individual defendants was proper. *Id.* at 1247–48. Had Baker Hughes raised theories of piercing the corporate veil in this

*mer & Co.*, the revival or renewal of Delphi's corporate charter validated the execution of the settlement agreement and promissory note, "as if its certificate of incorporation had at all times remained in full force and effect." Del.Code tit. 8, § 312(e).[8]

Baker Hughes further argues, from a policy standpoint, that it would be unfair to permit Brooks to escape personal liability by virtue of the renewal of Delphi's corporate charter after Brooks had incurred the obligation to Baker Hughes by signing the settlement agreement and promissory note for Delphi while Delphi's charter was forfeit.[9] However, Baker Hughes's substantive arguments for personal jurisdiction in this case are based on the forfeit of Delphi's corporate charter under Delaware law. As discussed, Delaware law clearly authorizes the renewal or revival of a corporate charter for the express purpose of validating actions taken by the corporation's officers or agents during the period of forfeiture. *See* Del.Code tit. 8, § 312(e); *Plummer & Co.*, 533 A.2d at 1245–46. This is a right afforded to corporations under Delaware law.[10] Baker Hughes does not raise any other arguments, under

Texas or Delaware law, for asserting personal jurisdiction over Brooks. Consequently, we overrule Baker Hughes's sole issue.

We affirm the trial court's order granting the special appearance and dismissing Baker Hughes's lawsuit.

FROST, J., dissenting.

KEM THOMPSON FROST, Justice, dissenting.

Today the court is asked to determine whether the trial court erred in dismissing a plaintiff corporation's contract claims against an individual defendant for lack of personal jurisdiction. The corporation, appellant Baker Hughes Incorporated, asserts that appellee Robert E. Brooks consented to personal jurisdiction by means of forum-selection clauses in the contracts under which Baker Hughes seeks to recover in this case. Because Brooks was a party to these contracts (and the forum-selection clauses contained within them) when the contracts were signed, when this suit was filed, and when he was served with citation, Brooks consented to personal

case, as grounds for finding personal jurisdiction over Brooks, our analysis of those arguments would not necessarily have been limited to Delaware law. *See generally Phillips v. United Heritage Corp.*, 319 S.W.3d 156, 161–68 (Tex.App.-Waco 2010, no pet.) (discussing issues relating to piercing the corporate veil under both Texas and foreign law as well as choice of law issues).

**8.** The record contains legally and factually sufficient evidence to support an implied finding by the trial court that Delphi's corporate charter has been revived or renewed. Baker Hughes does not argue otherwise.

**9.** Baker Hughes suggests that this would be "judicial creation of a tool to aid a debtor in his efforts to defraud his creditors," apparently not recognizing that the holding is required by operation of Delaware Code, title 8, section

312(e). Baker Hughes also does not differentiate between personal jurisdiction and liability. *See generally ACS Partners, LLC v. Gross*, No. 01–11–00245–CV, 2012 WL 1655547, at *4 (Tex.App.-Houston [1st Dist.] May 4, 2012, no pet.) (discussing distinction between personal jurisdiction and liability). Although Brooks cites *ACS Partners* in his briefing, it is distinguishable from the present case because it dealt with a jurisdictional argument based on the Texas Tax Code and not the Delaware Code and because it did not involve a contract containing a forum selection clause. *Id.* at 3–4.

**10.** In terms of policy, it is worth noting that Baker Hughes thought it was contracting with Delphi and not with Brooks as an individual, and by operation of Delaware law, the contract is between only Baker Hughes and Delphi.

jurisdiction, so the exercise of personal jurisdiction over him in a suit to enforce the contracts would not violate the Due Process Clause of the United States Constitution.

*Brooks had the burden to show that he did not consent to personal jurisdiction and that the Texas court's exercise of personal jurisdiction over him would violate the Due Process Clause, an issue governed by federal law.*

In its petition, Baker Hughes asserted that Brooks was a party to the Settlement Agreement and promissory note.[1] Baker Hughes also asserted that Brooks was bound by the forum-selection clauses in these two contracts, in which the parties agreed to resolve disputes concerning these contracts in Harris County, Texas. The Settlement Agreement purports to be an agreement between BJ Services Company, a subsidiary of Baker Hughes, and Delphi Consulting, Inc., a Louisiana corporation. Though Brooks signed the Settlement Agreement and promissory note, the contracts reflect that he signed them on behalf of Delphi Consulting, Inc., a Louisiana corporation, as its President.

In its petition, Baker Hughes asserted that there is no Louisiana corporation named Delphi Consulting, Inc., and Brooks did not dispute this assertion. Instead, in his special appearance, Brooks asserted that Delphi Consulting, Inc. was erroneously described as a Louisiana corporation in the contracts and that Delphi Consulting was actually a Delaware corporation. This Delaware corporation was not in good standing with the state of Delaware either when the contracts were signed in November 2010 or when suit was filed against

Brooks and citation served on him in January 2012. Shortly after Brooks was served with citation, this Delaware corporation was brought back into good standing with the State of Delaware. Brooks attached a certificate from the State of Delaware showing that Delphi Consulting—whose charter was previously void under Delaware law—was currently in good standing and had paid all its franchise taxes.

In its response to Brooks's special appearance, Baker Hughes submitted the following testimony from Brooks's deposition:

- Delphi Consulting was an operator of two or three wells in Mississippi in 1995 and did some business with BJ Services Company at that time.

- Delphi Consulting stopped serving as operator of these wells in approximately 1997 and ceased doing business at that time.

- Subsequently, Delphi Oil, Inc., a sister company to Delphi Consulting was operating and doing business with BJ Services Company. Nonetheless, BJ Services Company sent their bills to Delphi Consulting, even though Delphi Oil, rather than Delphi Consulting, was operating the wells.

- Delphi Oil paid the invoices sent to Delphi Consulting.

- Brooks noticed that the invoices were being sent to Delphi Consulting rather than Delphi Oil, but continued doing business in that manner.[2]

Brooks did not plead or prove that the forum-selection clauses are invalid or unenforceable, nor did Brooks maintain that

---

1. Copies of the Settlement Agreement and promissory note were attached to the petition.

2. Brooks stated: "We never asked them to bill Delphi Consulting, we never told them to bill Delphi Consulting. They just did it and

we thought, well, you know, they—you know, that the big credit department can't get this straight so we just pay them, you know, regardless of who they bill."

the claims in this case are not within the scope of these clauses. Rather, Brooks asserted that these clauses are not binding on him in his individual capacity and that he signed the Settlement Agreement and promissory note only in his capacity as agent of Delphi Consulting. Notably, Brooks had the burden of negating this basis of personal jurisdiction and showing that he did not consent to personal jurisdiction through these forum-selection clauses.[3] If Brooks is bound by these forum-selection clauses, then he has consented to the exercise of personal jurisdiction over him in this case, and the trial court should have denied his special appearance.[4]

The Supreme Court of Texas has held that Texas law allows Texas courts to exercise personal jurisdiction over a defendant as long as the assertion of personal jurisdiction does not violate the Due Process Clause of the United States Constitution.[5] Thus, the requirement that the exercise of personal jurisdiction complies with state law and federal due process reduces to a single question of whether the exercise of personal jurisdiction complies with federal due process.[6] This is a question governed by federal law, rather than by state law.[7]

***The issue is whether the federal Due Process Clause allows the exercise of personal jurisdiction over Brooks based upon the forum-selection clauses, not whether Brooks is liable on the claims Baker Hughes asserts against him***

Because today's task is to determine jurisdiction, not liability, the court must focus on the jurisdictional inquiry rather than ultimate liability on the claims asserted. As Brooks himself points out in his appellate briefing, in determining whether the Due Process Clause allows Texas courts to exercise personal jurisdiction over Brooks in this case, this court is not to consider the merits of Baker Hughes's claims or whether Brooks may be held liable to Baker Hughes for failure to pay the promissory note.[8] Thus, the issue at hand is not whether Texas law or Delaware law provides that Brooks may have liability on the promissory note; the issue is whether, under federal due process law, Brooks may be held to have consented to personal jurisdiction by means of the forum-selection clauses.[9]

3. *See Moki Mac River Expeditions v. Drugg,* 221 S.W.3d 569, 574 (Tex.2007); *Tri–State Building Specialties, Inc. v. NCI Building Sys., L.P.,* 184 S.W.3d 242, 247 (Tex.App.-Houston [1st Dist.] 2005, no pet).

4. *See Marrocco v. Hill,* No. 14–10–01077–CV, 2011 WL 5009489, at *3–4 (Tex.App.-Houston [14th Dist.] Oct. 20, 2011, pet. denied) (mem. op.); *Tri–State Building Specialties, Inc.,* 184 S.W.3d at 247–49.

5. *See Moki Mac River Expeditions,* 221 S.W.3d at 575; *Tri–State Building Specialties, Inc.,* 184 S.W.3d at 248.

6. *See Moki Mac River Expeditions,* 221 S.W.3d at 575; *Tri–State Building Specialties, Inc.,* 184 S.W.3d at 248.

7. *See Goodyear Dunlop Tires Operations, S.A. v. Brown,* —— U.S. ——, ——, 131 S.Ct. 2846, 2853–54, 180 L.Ed.2d 796 (2011); *D.J. Investments v. Metzeler Motorcycle Tire Agent Gregg, Inc.,* 754 F.2d 542, 545 (5th Cir.1985); *Moki Mac River Expeditions,* 221 S.W.3d at 575; *Tri–State Building Specialties, Inc.,* 184 S.W.3d at 248.

8. *See Information Services Group, Inc. v. Rawlinson,* 302 S.W.3d 392, 397–98, 407 (Tex. App.-Houston [14th Dist.] 2009, pet. denied); *Weldon–Francke v. Fisher,* 237 S.W.3d 789, 792–94 (Tex.App.-Houston [14th Dist.] 2007, no pet.).

9. *See Marrocco,* 2011 WL 5009489, at *3–4; *Information Services Group, Inc.,* 302 S.W.3d at 397–98, 407; *Weldon–Francke,* 237 S.W.3d at 792–94; *Tri–State Building Specialties, Inc.,* 184 S.W.3d at 247–49.

*Brooks did not carry his burden of showing that the exercise of personal jurisdiction over him in this case would violate the Due Process Clause.*

When Brooks signed the contracts containing the forum-selection clauses in November 2010, Delphi Consulting was not in good standing, its charter was "void," and all powers conferred upon Delphi Consulting were inoperative.[10] When Baker Hughes sued Brooks in January 2012, and had citation served on him in the case under review, the status of Delphi Consulting was the same. Shortly after being served and before Brooks filed his special appearance, Delphi Consulting brought itself back into good standing, so that its charter was no longer void and its corporate powers were restored.[11] The court's focal point in this personal-jurisdiction analysis should not be on the restorative powers of Delaware law but on whether, under federal law, due process would be violated if a Texas court exercised jurisdiction over one who signs contracts agreeing to a Texas forum.

At the time Brooks signed the contracts with BJ Services Company and at the time Baker Hughes sued Brooks to enforce them, Delphi Consulting (Brooks' purported principal) was charterless and inoperative. Hence, Brooks was not acting as agent vis-á-vis a third party but individually. Unless the third party agrees otherwise, one who makes a contract with a third party purportedly as an agent on behalf of a principal becomes a party to the contract if the purported agent knows or has reason to know that the purported principal lacks capacity to be a party to a contract.[12] Brooks made contracts (the Settlement Agreement and promissory note) with BJ Services Company, purportedly as an agent of Delphi Consulting, Inc., a Louisiana corporation. Because BJ Services Company did not agree otherwise, Brooks is a party to these contracts in his individual capacity if Brooks knew or had reason to know that the purported principal lacked capacity to be a party.[13] And, he did.

According to his own testimony, Brooks knew that the entity that had been dealing with BJ Services Company regarding the services and materials in question was Delphi Oil—not Delphi Consulting. This testimony indicates that Brooks signed the Settlement Agreement and promissory note knowing that Delphi Oil should be the entity executing these agreements, and knowing that Delphi Consulting had not been actively conducting business for a number of years. Though Delphi Consulting still may have existed, Brooks, as President of Delphi Consulting, had reason to know that this corporation was not in good standing,[14] that its charter was void, and therefore, that it lacked capacity to be a party to these contracts.[15]

10. *See* Del.Code Ann. tit. 8, § 510 (West 2013).

11. *See* Del.Code Ann. tit. 8, § 312(e) (West 2013).

12. *See Marrocco*, 2011 WL 5009489, at *4, n. 4.

13. *See id.*

14. *See id.*

15. Brooks's special appearance, which Brooks verified, contained a statement that "[w]hen suit was filed, it was learned that Delphi Consulting had fallen out of good standing in the State of Delaware; however, it has been reinstated and is now in good standing." In this statement, Brooks stated that "it was learned"; he did not say "I learned that Delphi Consulting had fallen out of good standing." In any event, this statement does not address whether Brooks had reason to know that Delphi Consulting was not in good standing.

Applying these legal principles in the federal due-process analysis, Brooks was a party to the Settlement Agreement and promissory note in his individual capacity when he signed these contracts in November 2010, and when he was sued and served with citation in January 2012. The forum-selection clauses in these contracts, in unambiguous language, apply to all "parties."[16] Thus, in November 2010, and in January 2012, Brooks was bound by the forum-selection clauses and consented to the exercise of personal jurisdiction over him by the Texas court.[17]

The majority concludes that, under Title 8, section 312(e) of the Delaware Code, the renewal and revival of Delphi Consulting validates all contracts purportedly entered into on behalf of Delphi Consulting.[18] Even presuming that, under Delaware law, the renewal and revival of Delphi Consulting retroactively makes Delphi Consulting a party to the Settlement Agreement and promissory note in lieu of Brooks, this conclusion does not change the fact that Brooks was a party to the contracts and consented to personal jurisdiction in Harris County, Texas, from November 2010 through January 2012. Nor does this conclusion require this court to retroactively

erase Brooks' consent to personal jurisdiction under federal law for the purposes of determining whether the exercise of personal jurisdiction over Brooks in this case would violate the Due Process Clause of the United States Constitution.[19] As explained above, Brooks was a party to the contracts and consented to personal jurisdiction through the forum-selection clauses when Brooks signed these contracts. And, Brooks was a party to the contracts when Baker Hughes sued him to enforce them. Even when served with citation in this case, Brooks was a party to these contracts. For these reasons, exercising personal jurisdiction over Brooks in this case would not violate the Due Process Clause, regardless of the operation of Title 8, section 312(e) of the Delaware Code.[20]

The majority cites the opinion of a Delaware Superior Court judge.[21] But, the part of the opinion on which the majority relies involves the construction of the Delaware long-arm statute rather than a due process analysis.[22] In addition, the Delaware court found the long-arm statute and the Due Process Clause were satisfied under another analysis, so the cited portion appears to contain only obiter dicta.[23]

---

16. Both forum selection clauses apply to "the parties," an undefined term in each contract.

17. See Marrocco, 2011 WL 5009489, at *3–4; Tri–State Building Specialties, Inc., 184 S.W.3d at 247–49.

18. See Del.Code Ann. tit. 8, § 312(e). The majority also states that this renewal and revival precludes Brooks from being liable on these contracts. But, as discussed above, whether Brooks is liable on the contacts, is not at issue in this appeal. See Information Services Group, Inc., 302 S.W.3d at 397–98, 407; Weldon–Francke, 237 S.W.3d at 792–94.

19. See Goodyear Dunlop Tires Operations, S.A., — U.S. at —, 131 S.Ct. at 2853–54; D.J. Investments, 754 F.2d at 545; Moki Mac River Expeditions, 221 S.W.3d at 575; Tri–

State Building Specialties, Inc., 184 S.W.3d at 248.

20. See Marrocco, 2011 WL 5009489, at *3–4; Tri–State Building Specialties, Inc., 184 S.W.3d at 247–49.

21. See Plummer & Co. Realtors v. Crisafi, 533 A.2d 1242, 1245 (Del.Super.Ct.1987).

22. See id.

23. See id. at 1245–48. Brooks cites ACS Partners, LLC v. Gross, No. 01–11–00245–CV, 2012 WL 1655547, at *4 (Tex.App.-Houston [1st Dist.] May 4, 2012, no pet.). As the majority correctly points out, ACS Partners is not on point because it did not involve forum-selection clauses and because it addressed a

For the reasons stated above, Brooks did not satisfy his burden of showing that the exercise of personal jurisdiction over him would violate the Due Process Clause of the United States Constitution.[24] Accordingly, this court should reverse the trial court's granting of Brooks's special appearance and remand for further proceedings. Because it does not, I respectfully dissent.

Texas statute that imposed *liability* on directors or officers of a corporation for certain corporate debts. *See id.* at *3–4.

24. *See Marrocco,* 2011 WL 5009489, at *3–4; *Tri–State Building Specialties, Inc.,* 184 S.W.3d at 247–49.