**Affirmed and Opinion Filed April 27, 2017**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-16-00286-CV

### GAIL FRIEND AND GAIL FRIEND, P.C., Appellants
### V.
### ACADIA HOLDING CORPORATION AND ACADIA LIFE LIMITED, Appellees

**On Appeal from the 162nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-13-11354**

## MEMORANDUM OPINION
Before Justices Bridges, Lang-Miers, and Whitehill
Opinion by Justice Bridges

Gail Friend and Gail Friend, P.C., appeal the trial court's order granting the special appearance of Acadia Holding Corporation and Acadia Life Limited (Acadia). In a single issue, Friend argues the trial court erred in sustaining Acadia's special appearance. We affirm the trial court's order.

Plaintiffs' fifth amended petition, the operative pleading in this case, alleged Friend began participating in 1994 in an investment plan (the PBT Plan) at the recommendation of Tracy Sunderlage. The PBT Plan was formed by Tracy, Sunderlage Resource Group International, and Sunderlage Resource Group. Tracy is a Florida resident. In or around 2000, Friend began receiving correspondence from Carey Sunderlage that continued to represent the viability of the PBT Plan. Carey is an Illinois resident. In 2005, Tracy restructured the PBT

Plan to convert it to a foreign captive insurance company that would become the Maven Trust. In 2008, Friend attended a conference in Canada where Carey and Tracy induced Friend to invest in Acadia Life Limited, another offshore insurance company. In 2012, Friend received notice from the Maven Trust and Acadia Life Limited that her investments were lost.

Carey and Linda Sunderlage, along with Acadia Holding Corporation and Acadia Life Limited were named as defendants in the fifth amended petition. The petition alleged Carey, Linda, Acadia Holding, and Acadia Life "made misrepresentations, concealed material facts, and breached fiduciary duties" to Friend. The petition asserted generally that Acadia Holding, a Florida resident, and Acadia Life, a Bermuda resident, did "business in and conducted torts in the State of Texas which [gave] rise to [Friend's] claims."

Acadia Life and Acadia Holding both filed special appearances. Acadia Life argued it is a Bermuda corporation with its principal place of business in Hamilton, Bermuda; it does no business and has never conducted business in Texas; it does not market its insurance products to Texas residents, owns no property in Texas, and has no employees in Texas. Further, Acadia Life argued it has no agents in Texas, has not authorized any agents to act on its behalf in Texas, and has never issued a policy of insurance in Texas or in the United States. Instead, Acadia Life argued its only connection to this case is as an insurer that issued a single policy insuring Friend's life. The application for Friend's policy was executed in Canada on December 13, 2005, and a copy of Friend's Texas driver's license was attached. The application provided as follows:

> The undersigned acknowledges that Acadia [Life] is authorized to transact any insurance business solely from Bermuda and specifically acknowledges that he has not been solicited with a view to the sale of life insurance or other insurance products in any place other than Bermuda and agrees that by signing this Application, he waives the right to assert otherwise at any time in the future. In addition, subsequent Life Insurance Purchase Contributions and communications with regard to the servicing of the Life Insurance Policy may be subject to

–2–

restrictions by reason of the non-admitted status of Acadia in the place of residence or domicile of the undersigned.

Thus, Acadia Life argued, it was not subject to personal jurisdiction in Texas, based either on general or specific jurisdiction.

Acadia Holding also filed a special appearance asserting it is a Delaware corporation with its principal place of business in Florida, it has not purposely availed itself of the privileges of doing business in Texas, and it "lacks any connection to this case or the Friend Plaintiffs." Acadia Holding characterized Friend's allegations as an attempt to establish jurisdiction over it based on (1) the acts of Tracy, Linda, and Carey, (2) "the acts of other defendants by asserting conclusory allegations that the defendants were engaged in conspiracy and aided and abetted each other, and (3) the acts of Acadia Life." In response, Acadia Holding argued the unilateral activity of other defendants could not be imputed to Acadia Holding; Tracy, Linda, and Carey were not agents of Acadia Holding, and there was no basis for imputing the actions of Acadia Life to Acadia Holding.

Acadia Holding's special appearance was supported by the affidavit of its president, Michael Goldberg. Goldberg's affidavit stated that, among other things, Acadia Holding has never conducted any business in Texas; does not have bank accounts, assets, offices or agents in Texas; did not have any contact with Friend regarding Acadia Life policies; was not involved in the sale, issuance, or administration of Friend's insurance policy; was not involved in the management of Acadia Life and did not control Acadia Life's operations; and did not employ Tracy, Linda, or Carey as its agents.

Friend filed a response to the special appearances in which she grouped Acadia Life and Acadia Holding together as a single entity, "Acadia," and asserted that "Acadia" and its agents induced Friend to invest "over $800,000" in an Acadia Life policy and caused Friend to lose "all of her money due to the fraudulent nature of Acadia's investment scheme perpetrated by Carey

–3–

Sunderlage and Tracy Sunderlage." Friend alleged Acadia and its "agents," including Tracy, forged her signature on the policy application and listed Toronto, Canada, as the location where Friend executed the application. Friend alleged Tracy emailed the application to Friend in Houston and directed her to sign it but not to date it so that Acadia and its "agents" could "manipulate the date" and create "the illusion that *everything* occurred outside the United States." In addition to pointing out Friend's policy payments came from Texas, Friend alleged "Acadia" has issued at least ten insurance policies and/or annuities to Texas residents, resulting in payments of over $16 million to Acadia from Texas residents.

Acadia Life and Acadia Holding filed a reply in which they argued Friend's "unpleaded and unsupported agency theory [did] not impute actions by Tracy Sunderlage or Carey Sunderlage to Acadia Life." Specifically, they argued Friend's fifth amended petition did not allege agency as a theory of jurisdiction; Friend did not and cannot prove the existence of an agency relationship between Acadia Life and Tracy or Carey; Tracy only provided investment management services to Acadia Life insureds who voluntarily elected him as their investment manager; and the Acadia Life investment management agreement provided that the investment manager is an independent contractor and has no authority to bind, obligate, or represent Acadia Life. The trial court subsequently granted Acadia Life's and Acadia Holdings' special appearances, and this appeal followed.

In a single issue, Friend argues the trial court erred in granting Acadia's special appearance. The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the personal jurisdiction of a Texas court. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). When this burden is met, the burden shifts to the nonresident to negate all bases of personal jurisdiction asserted by the plaintiff. *Id.* A defendant may negate jurisdiction on a legal basis by showing that even if the plaintiff's

allegations are true, they do not establish jurisdiction. *Kelly v. General Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). A defendant may also negate jurisdiction on a factual basis by introducing evidence that rebuts the allegations in the pleadings. *Id.*

The determination of whether a court has personal jurisdiction over a defendant is a question of law. *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013). When, as in this case, the trial court does not issue findings of fact and conclusions of law, all facts necessary to support the judgment and supported by the evidence are implied. *BMC Software*, 83 S.W.3d at 795. When the appellate record includes the reporter's record and clerk's record, these implied findings are not conclusive and may be challenged for legal and factual sufficiency. *Id.* When the trial court's findings are supported by sufficient evidence, or when the material facts are undisputed, we review the trial court's ruling on a special appearance de novo. *Baker Hughes Inc. v. Brooks*, 405 S.W.3d 246, 249 (Tex. App.—Houston [14th Dist.] 2013, pet. denied).

Texas courts may assert jurisdiction over a nonresident defendant if (1) the Texas long-arm statute authorizes the exercise of jurisdiction and (2) the exercise of jurisdiction is consistent with federal and state constitutional guarantees of due process. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 17.042 (Texas long-arm statute). The Texas long-arm statute allows Texas courts to exercise personal jurisdiction "as far as the federal constitutional requirements of due process will permit." *BMC Software*, 83 S.W.3d at 795 (quoting *U–Anchor Advert., Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex. 1977)). Consequently, "the requirements of the Texas long-arm statute are satisfied if an assertion of jurisdiction accords with federal due-process limitations." *Moki Mac River Expeditions*, 221 S.W.3d at 575.

The exercise of jurisdiction over a nonresident comports with due process when (1) the nonresident has minimum contacts with the forum state, and (2) asserting jurisdiction complies with traditional notions of fair play and substantial justice. *Moncrief Oil*, 414 S.W.3d at 150; *see International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). "A defendant establishes minimum contacts with a state when it purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338 (Tex. 2009). If a defendant's Texas contacts are random, fortuitous, or attenuated, a defendant is not subject to jurisdiction in Texas courts. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005). In addition, a defendant must seek some benefit, advantage, or profit by availing itself of the jurisdiction of Texas. *Id.* The defendant's activities, whether they consist of direct acts within Texas or conduct outside of Texas, "must justify a conclusion that the defendant could reasonably anticipate being called into a Texas court." *American Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002) (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

A nonresident defendant's contacts can give rise to either specific or general jurisdiction. *BMC Software*, 83 S.W.3d at 795. General jurisdiction exists when the defendant has made continuous and systematic contacts with the forum, such that the forum may exercise jurisdiction over the defendant even if the alleged liability does not arise from or relate to those contacts. *Id.* at 796. In contrast, specific jurisdiction is established if the defendant's alleged liability arises out of or is related to the defendant's contacts with the forum. *Moki Mac River Expeditions*, 221 S.W.3d at 576 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, (1984)).

An agent's authority to act on behalf of a principal depends on some communication by the principal either to the agent (actual or express authority) or to the third party (apparent or implied authority). *Gaines v. Kelly*, 235 S.W.3d 179, 182 (Tex. 2007). Apparent authority is based on estoppel, arising either from a principal knowingly permitting an agent to hold himself out as having authority or by a principal's actions which lack such ordinary care as to clothe an agent with the indicia of authority, thus leading a reasonably prudent person to believe that the agent has the authority he purports to exercise. *Id.* The principal's full knowledge of all material facts is essential to establish a claim of apparent authority based on estoppel. *Id.* Moreover, when making that determination, only the conduct of the principal is relevant. *Id.* Finally, the standard is that of a reasonably prudent person, using diligence and discretion to ascertain the agent's authority. *Id.* at 183. Thus, to determine an agent's apparent authority we examine the conduct of the principal and the reasonableness of the third party's assumptions about authority. *Id.*

Here, it is undisputed that Acadia Life is a non-resident of Texas and resides in Bermuda, and Acadia Holding is a non-resident of Texas and resides in Florida. The record contains an application for Friend's life insurance policy executed in Canada. The application provides that Acadia Life is authorized to transact any insurance business solely from Bermuda. Friend's fifth amended petition alleged the following:

> In 2008 Friend attended a conference in Canada and met with Cary Sunderlage and Tracy Sunderlage. At this meeting Carey Sunderlage introduced Friend to another highly risky offshore insurance company Acadia Life Limited. Carey Sunderlage induced Friend to invest an additional approximately $800,000 into an Acadia Life Limited policy that would be used to fund a PPA account with Maven.

Thus, the petition does not mention the allegations that Acadia and its "agents," including Tracy, forged her signature on the policy application and listed Toronto, Canada, as the location where Friend executed the application. Friend's fifth amended petition alleges Tracy and Carey met

–7–

with Friend in Canada and introduced Friend to Acadia Life at this meeting. To the extent Friend alleges Acadia and its agents conspired to forge Friend's signature, the assertion of personal jurisdiction over a nonresident defendant may not be based solely upon the effects or consequences of an alleged conspiracy with a resident in the forum state. *Nat'l Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 773 (Tex. 1995). We conclude Acadia Life and Acadia Holding did not have continuous and systematic contacts with Texas that would support the exercise of general jurisdiction. *See BMC Software*, 83 S.W.3d at 795; *Dukatt v. Dukatt*, 355 S.W.3d 231, 238 (Tex. App.—Dallas 2011, pet. denied). Further, Acadia Life and Acadia Holding did not purposely avail themselves of the benefits and protections of Texas law such as would support the exercise of specific jurisdiction. *See Spir Star AG v. Kimich*, 310 S.W.3d 868, 873 (Tex. 2010); *Dukatt*, 355 S.W.3d at 239. Under these circumstances, the trial court did not err in granting the special appearances of Acadia Life and Acadia Holding. *See BMC Software*, 83 S.W.3d at 795; *Michiana*, 168 S.W.3d at 785. We overrule Friend's issue.

We affirm the trial court's judgment.


/David L. Bridges/
DAVID L. BRIDGES
JUSTICE

160286F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

GAIL FRIEND AND GAIL FRIEND, P.C., Appellant

No. 05-16-00286-CV     V.

ACADIA HOLDING CORPORATION, ACADIA LIFE LIMITED, CAREY SUNDERLAGE, AND LINDA SUNDERLAGE, Appellee

On Appeal from the 162nd Judicial District Court, Dallas County, Texas
Trial Court Cause No. DC-13-11354.
Opinion delivered by Justice Bridges. Justices Lang-Miers and Whitehill participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee ACADIA HOLDING CORPORATION, ACADIA LIFE LIMITED, CAREY SUNDERLAGE, AND LINDA SUNDERLAGE recover their costs of this appeal from appellant GAIL FRIEND AND GAIL FRIEND, P.C..

Judgment entered April 27, 2017.