# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-21-00309-CV

**Jennifer Lynne Keller, Appellant**

**v.**

**Brandy Denise Keller, Appellee**

### FROM COUNTY COURT AT LAW NO. 4 OF TRAVIS COUNTY
### NO. C-1-CV-20-005079, THE HONORABLE DIMPLE MALHOTRA, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Jennifer Lynne Keller appeals the trial court's final protective order in favor of her daughter, Brandy Denise Keller.[1]  In three issues, Jennifer asserts that the trial court erred in concluding that it had personal jurisdiction and, consequently, in denying her special appearance. Because the undisputed jurisdictional facts and the trial court's findings establish that the court had specific jurisdiction, we will affirm the trial court's final protective order.

## BACKGROUND

In November 2020, Brandy, who lives in Texas, filed an application for a lifetime stalking protective order against her mother Jennifer, who lives in Maryland.[2]  Jennifer

---

[1]  Because the parties share a surname, we refer to them by their first names for clarity.

[2]  The Texas Code of Criminal Procedure allows victims of certain criminal offenses, including the offense of stalking under Section 42.072 of the Penal Code, to obtain a protective order if the court finds there are reasonable grounds to believe that the person against whom the

responded to the suit, in part, by filing a special appearance to challenge the trial court's exercise of personal jurisdiction. *See* Tex. R. Civ. P. 120a (allowing nonresident defendant to appear in court for limited purpose "of objecting to the jurisdiction of the court over the person or property of the defendant"). Following a non-evidentiary hearing, the trial court denied Jennifer's jurisdictional challenge and, the same day, conducted a final hearing on Brandy's application.

The only witness presented at the final hearing was Brandy, who testified that she began receiving unwanted contacts from Jennifer in July 2019. According to her testimony, Brandy had sent Jennifer and her stepfather an e-mail earlier that month, explaining that she felt that she had been abused as a child. In the e-mail, Brandy asked Jennifer to acknowledge and apologize for certain events that Brandy viewed as abusive and traumatizing. Jennifer responded to Brandy's e-mail by denying the claims of abuse; in a reply e-mail, Brandy told Jennifer not to contact her again.

Despite the request for no contact, Jennifer continued to contact Brandy through e-mails, texts, phone calls, postcards, and packages. Brandy testified that soon after her July 2019 e-mail, Jennifer sent two postcards, the first accusing Brandy of lying and of suffering from a mental illness and the second with a crude image of "a middle finger." In the months that followed, Jennifer continued to contact Brandy in Texas by sending packages, phone calls, texts,

---

protective order is sought committed the offense. Former Tex. Code Crim. Proc. art. 7A.03(a) (repealed and recodified without substantive change in Chapter 7B, effective January 1, 2021) (Act of May 21, 2019, 86th Leg., R.S., ch. 469, § 3.01(2), 2019 Tex. Gen. Laws 1065, 1152); *see* Tex. Penal Code § 42.072 (elements of stalking). Although a protective order under the Code of Criminal Procedure is predicated on the applicant being a victim of a criminal offense, the proceedings on the application are civil proceedings. *Beach v. Beach*, No. 01-19-00123-CV, 2020 WL 1879553, at *4 (Tex. App.—Houston [1st Dist.] Apr. 16, 2020, pet. dism'd w.o.j.) (mem. op.); *Ex parte Garza*, 603 S.W.3d 492, 496-97 (Tex. App.—Corpus Christi-Edinburg 2020, no pet.) (concluding that there was no constitutional right to counsel in chapter 7A protective-order proceedings).

and e-mails.  In addition, Brandy testified that Jennifer contacted her employer twice, looking for a way to contact Brandy directly at work, and that Jennifer later sent her an e-mail that included two pictures of the exterior of Brandy's home.  According to Brandy's testimony, the contacts continued even after her attorney sent a cease-and-desist letter to Jennifer in November 2020.

In sum, the trial court was presented with evidence that between July 2019 and November 2020, Jennifer sent more than thirty unwanted communications to Brandy.  According to Brandy's testimony, each of these communications made her "feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended."  In addition, Brandy testified, "I've asked [Jennifer] to stop personally and through [] my legal representation.  And she's continued through e-mail, sending me packages, sending someone to my house to take photographs, and even contacting me through my work.  And I continue to feel unsafe."

At the conclusion of the hearing, the trial court denied Brandy's request for a lifetime protective order but instead signed a protective order for a seven-year period.  On Jennifer's request, the trial court issued findings of fact and conclusions of law.  On appeal, Jennifer asserts that the trial court erred in concluding that it could exercise personal jurisdiction and in failing to dismiss Brandy's suit.

**BACKGROUND LAW**

A Texas court has personal jurisdiction over a nonresident defendant if the exercise of personal jurisdiction is authorized by the Texas long-arm statute and is consistent with federal and state constitutional guarantees of due process.  *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007).  The Texas long-arm statute authorizes the exercise of jurisdiction over a nonresident who engages in activities that constitute "doing business" in

3

Texas—including, among other listed activities, "commit[ting] a tort in whole or in part in this state." Tex. Civ. Prac. & Rem. Code § 17.042. However, the long-arm statute's list of activities that constitute "doing business" is not exclusive, and the broad language of the long-arm statute allows Texas courts to exercise personal jurisdiction "as far as the federal constitutional requirements of due process will permit." *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). Thus, a Texas court may exercise personal jurisdiction over a nonresident under the Texas long-arm statute so long as doing so comports with due process. *Spir Star AG v. Kimich*, 310 S.W.3d 868, 872 (Tex. 2010); *Moki Mac*, 221 S.W.3d at 575 ("[T]he requirements of the Texas long-arm statute are satisfied if an assertion of jurisdiction accords with federal due-process limitations.").

"The Due Process Clause [of the Fourteenth Amendment] protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations." *Tabacinic v. Frazier*, 372 S.W.3d 658, 663 (Tex. App.—Dallas 2012, no pet.) (citing federal cases, including *Burger King Corp. v. Rudzewicz*, 471 U.S 462, 471-72 (1985); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 294 (1980)). The exercise of jurisdiction over a nonresident comports with federal due process when (1) the nonresident has minimum contacts with the forum state, and (2) asserting jurisdiction complies with traditional notions of fair play and substantial justice. *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013); *see International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). "A defendant establishes minimum contacts with a state when [she] 'purposefully avails [herself] of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'" *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338 (Tex. 2009) (citing *Hanson v.*

4

*Denckla*, 357 U.S. 235, 253 (1958)). "The defendant's activities, whether they consist of direct acts within Texas or conduct outside Texas, must justify a conclusion that the defendant could reasonably anticipate being called into a Texas court." *American Type Culture Collections, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002).

A nonresident defendant's minimum contacts with the forum state can give rise to either general or specific jurisdiction. *BMC Software*, 83 S.W.3d at 795. General jurisdiction exists when the defendant has made continuous and systematic contacts with the forum, such that the forum may exercise jurisdiction over the defendant even if the alleged liability does not arise from or relate to those contacts. *Id.* at 796. In contrast, specific jurisdiction exists only if the alleged liability arises out of or is related to the defendant's contact with the forum. *Moki Mac*, 221 S.W.3d at 576. When specific jurisdiction is alleged, the focus of the minimum-contacts analysis is on the relationship among the defendant, the forum, and the litigation. *Id.* at 575-76. Therefore, if the court concludes that a nonresident defendant has minimum contacts with Texas by purposefully availing himself of the privilege of conducting activities here, the court must then address whether the defendant's alleged liability arises out of or is related to those contacts. *Id.* at 579.

## STANDARD OF REVIEW

Whether a Texas court has personal jurisdiction over a nonresident defendant is a question of law that we review de novo. *Luciano v. SprayFoamPolymers.com, LLC*, 625 S.W.3d 1, 8 (Tex. 2021). However, trial courts

5

must often resolve questions of fact before deciding jurisdictional issues.[3] *Kelly v. General Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). On appeal, these findings of fact, express or implied, may be challenged for the legal and factual sufficiency of the evidence. *See BMC Software*, 83 S.W.3d at 794. When, as in this case, the defendant does not file an interlocutory appeal from the trial court's special-appearance ruling but instead raises the jurisdictional challenge in an appeal from the final judgment, the scope of review includes all the relevant evidence before the trial court, including the evidence presented at the final hearing. *GJP, Inc. v. Ghosh*, 251 S.W.3d 854, 871–72 (Tex. App.—Austin 2008, no pet.). Once we determine that the trial court's findings are supported by sufficient evidence, or if the jurisdictional facts are undisputed, we review the trial court's ruling on the special appearance de novo. *Old Republic Nat'l Title Co. v. Bell*, 549 S.W.3d 550, 560 (Tex. 2018); *Baker Hughes Inc. v. Brooks*, 405 S.W.3d 246, 249 (Tex. App.—Houston [14th Dist.] 2013, pet. denied).

## ANALYSIS

The sole basis for personal jurisdiction alleged by Brandy is that Jennifer committed a tort in Texas, within the meaning of the long-arm statute, by sending unwanted and harassing communications to Brandy in Texas. *See Kelly*, 301 S.W.3d at 659-60 (noting that allegations that defendant committed tortious acts in Texas satisfies plaintiff's initial burden "to plead facts bringing the defendant within reach of the long-arm statute"); *see also* Tex. Civ. Prac.

---

[3] When a challenge is made to personal jurisdiction, the parties bear shifting burdens of proof. *Kelly v. General Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). The plaintiff bears the initial burden of pleading allegations sufficient to bring the nonresident defendant within the reach of the Texas long-arm statute. *Id.* If the plaintiff meets this burden, the burden shifts to the defendant to negate all bases for personal jurisdiction alleged by the plaintiff, on either a legal or factual basis. *Id.*

& Rem. Code § 85.003 (statutory tort of stalking). In the trial court, and now on appeal, Jennifer does not dispute that she sent unwanted communications to Brandy in Texas, including postcards, e-mails, and text messages, some of which were admitted as exhibits at the final hearing.[4] Jennifer also does not dispute that Brandy's lawsuit for a protective order relates to or arises from these communications. *See Moki Mac*, 221 S.W.3d at 576. Instead, in her third issue on appeal, Jennifer argues that these communications, even if proven, fail to demonstrate purposeful availment and that, consequently, the trial court erred in concluding it could exercise specific jurisdiction.[5]

The "touchstone of jurisdictional due process is 'purposeful availment.'" *Spir Star AG*, 310 S.W.3d at 873 (quoting *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex. 2005)). The test for purposeful availment encompasses three considerations. *Moki Mac*, 221 S.W.3d at 575 (citing *Michiana*, 168 S.W.3d at 784-85). First, we consider only the nonresident defendant's contacts with the forum, not the unilateral activity of another party or third person. *Id.* Second, the contacts on which jurisdiction is based must be purposeful rather than random, fortuitous, or attenuated. *Id.* Finally, the defendant must seek benefit, advantage, or profit by availing itself of the benefits of the forum's laws. *Id.*

"Physical presence in the forum is not a prerequisite to [personal] jurisdiction," *Walden v. Fiore*, 571 U.S. 277, 285 (2014), and a defendant may create minimum contacts by

---

[4] The trial court's findings of fact and conclusions of law include a finding that "[Jennifer] has committed acts of repeated and unwanted contact against [Brandy]." Jennifer does not challenge that finding on appeal. *See McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986) (noting that unchallenged findings of fact are binding on appellate court if supported by legally-sufficient evidence).

[5] Although the trial court expressly concluded that it had specific jurisdiction, it did not make any conclusions or findings as to general jurisdiction.

reaching out to a forum state, without ever physically entering the state, *see Burger King*, 471 U.S. at 476 ("[I]t is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted."). On the other hand, although physical presence is not required, "[t]he plaintiff cannot be the only link between the defendant and the forum." *Walden*, 571 U.S. at 285. "Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id.* Therefore, when communications between a nonresident and a resident are alleged as the basis for jurisdiction, we must look to the quality and nature of the communications to determine whether they establish purposeful availment. *Old Republic Nat'l Title*, 549 S.W.3d at 560.

Jennifer argues that her communications are insufficient to demonstrate purposeful availment but instead show only that she directed communications at an individual who happens to live in Texas. In support of her argument, Jennifer relies on the Texas Supreme Court's decision in *Michiana Easy Livin' Country*, 168 S.W.3d at 788-92. In that case, the Texas plaintiff sued an out-of-state RV seller for an alleged misrepresentation made to the plaintiff during a single phone call which resulted in the plaintiff's purchase of an RV. *Id.* at 784, 788. On review of the trial court's denial of the RV seller's special appearance, the supreme court concluded that the single telephone conversation, which was initiated by the plaintiff to purchase an RV, failed to demonstrate purposeful availment. *Id.* at 794. In reaching this conclusion, the supreme court rejected the plaintiff's argument that specific jurisdiction was established by his allegations that the RV seller had "directed a tort" to Texas, such that the tort caused injury in Texas. *Id.* at 791-92. The court also disapproved of opinions from courts of

8

appeals suggesting that specific jurisdiction turns "on whether a defendant's contacts were tortious rather than the contacts themselves." *Id.*

To the extent Jennifer contends that *Michiana* is controlling in this case, we disagree. Unlike the defendant in *Michiana*, who only received the phone call that was the basis for the assertion of jurisdiction, the undisputed evidence in this case shows that Jennifer *initiated* the contact with Brandy in Texas and that she did so more than thirty times. *See Old Republic Nat'l Title*, 549 S.W.3d at 561 (concluding that phone calls with plaintiff in Texas was not sufficient to demonstrate purposeful availment but noting that "the record contains no evidence . . . that [defendant] initiated the calls with [plaintiff]"). Therefore, Jennifer's contacts were not based on Bandy's unilateral decision to live in Texas but on Jennifer's intentional conduct in sending communications to Brandy in Texas, where she knew Brandy lived. *See Bunting v. Kyle Bunting Holdings, Inc.*, No. 03-18-00656-CV, 2019 Tex. App. LEXIS 5328, at *11 (Tex. App.—Austin June 27, 2019, pet. denied) (mem. op.) (holding that phone calls were sufficient to establish personal availment and distinguishing *Michiana* by noting that phone call contacts were purposeful in being initiated by defendant); *see also Moncrief Oil*, 414 S.W.3d at 153 (noting that "[u]nlike in *Michiana*, the defendants had a 'say in the matter'" and "were not unilaterally haled into forming contracts with Texas"). As a result, we conclude that Jennifer's communication contacts with Texas were purposeful and not random, fortuitous, or attenuated.

As to the third consideration for establishing purposeful availment, Jennifer asserts that there is no evidence that she sought any "benefit, advantage, or profit" from her communications to Brandy. As this court has previously recognized, "[t]he requirement that a nonresident defendant must seek some 'benefit, advantage, or profit' by availing itself of the forum is 'premised on implied consent.'" *Bunting*, 2019 Tex. App. LEXIS 5328, at *12 (quoting

*Moncrief Oil*, 414 S.W.3d at 154). That is, a nonresident consents to suit by invoking the benefits and protections of the forum's law. *Id.* While we agree that there is no evidence that Jennifer sought a financial benefit, profit, or advantage, we do not construe the relevant case law regarding purposeful availment as requiring a financial motive. *See id.* at *12-13 ("[W]e see no reason why seeking a non-financial benefit may not 'invok[e] the benefits and protections of the forum's laws.'"). Moreover, the totality of the evidence, including Brandy's testimony concerning the offensive nature of Jennifer's communications, supports an inference that Jennifer sought to benefit *personally* from her communications by intentionally causing Brandy to be fearful or agitated. *See id*. at *13 (concluding that nonresident defendant who made phone calls to Texas "sought the benefit of getting the employment terminated of a KBH employee whom she alleged was having an affair [with her spouse]"). Consequently, Jennifer's communications to Brandy in Texas justify a conclusion that she could reasonably anticipate being called into a Texas court. *See id.* at *14.

In short, the undisputed jurisdictional facts and the evidence demonstrate that Jennifer "'purposefully avail[ed] [herself] of the privilege of conducting activities within [Texas]," s*ee Retamco*, 278 S.W.3d at 337, and that Brandy's claims arise from or relate to these contacts*, see Spir Star AG*, 310 S.W.3d at 873 ("A court has specific jurisdiction over a defendant if its alleged liability arises from or is related to an activity conducted within the forum."). In addition, Jennifer does not challenge the trial court's finding that the exercise of specific jurisdiction comports with traditional notions of fair play and substantial justice. *See* Tex. R. App. P. 38.1; *Colmen v. Santander Consumer USA, Inc.*, No. 05-17-00101-CV, 2017 Tex. App. LEXIS 10341, at *25 n.9 (Tex. App.—Dallas Nov. 3, 2017, no pet.) (mem. op.) (affirming denial of special appearance without deciding whether exercise of jurisdiction

10

comported with "traditional notions of fair play and substantial justice" because appellant did not challenge finding on that issue). Based on the trial court's findings and the undisputed evidence, we conclude the trial court did not err in concluding that it could exercise specific jurisdiction over Brandy's claims against Jennifer. We overrule Jennifer's third issue on appeal.[6]

## CONCLUSION

We affirm the trial court's final protective order.

_____
Chari L. Kelly, Justice

Before Chief Justice Byrne, Justices Triana and Kelly

Affirmed

Filed: February 23, 2023

---

[6] In her first appellate issue, Jennifer asserts that the trial court's finding that she hired a private investigator in Texas to take pictures of Brandy's home is not supported by the evidence and that, alternatively, this activity is insufficient to confer personal jurisdiction. In her second issue, Jennifer asserts that to the extent statutes other than the Texas long-arm statute authorize a court to exercise personal jurisdiction over certain cases involving stalking, those statutes do not apply here. Because we conclude that (1) Jennifer's communications to Brandy, standing alone, are sufficient to support the trial court's conclusion that Jennifer has minimum contacts with Texas, and (2) the court's exercise of personal jurisdiction is authorized by the long-arm statute and comports with due-process limitations, we need not decide these issues. *See* Tex. R. App. P. 47.1