# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-23-00421-CV

---

**John Valentini, John Joseph Valentini Sr., and Lynn Marie Valentini, Appellants**

**v.**

**James Cordier and Michael Gross, Appellees**

---

**FROM THE 425TH JUDICIAL DISTRICT COURT OF WILLIAMSON COUNTY
NO. 22-1927-C480, THE HONORABLE RICK J. KENNON, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

John Valentini, John Joseph Valentini Sr., and Lynn Marie Valentini appeal from the trial court's order granting the special appearances of James Cordier and Michael Gross and dismissing the Valentinis' lawsuit for lack of personal jurisdiction. For the following reasons, we affirm the trial court's judgment.

## BACKGROUND[1]

*The start of the parties' relationship*

John Valentini (John Jr.) is the son of John Joseph Valentini Sr. (John Sr.) and Lynn Marie Valentini (Lynn).[2] This lawsuit stems from trading losses the Valentinis incurred in

---

[1] The facts recited in this section are derived from the trial court's unchallenged Findings of Fact and Conclusions of Law and the undisputed evidence submitted by the parties in their special-appearance filings.

connection with financial accounts they had with non-party INTL FCStone, Financial Inc. (INTL), which accounts were managed by non-party OptionSellers.com, Inc. (OSI). OSI is a privately held Commodity Trading Firm organized under the laws of Florida and registered with the National Futures Association (NFA). OSI's sole office and headquarters are in Tampa, Florida, and it has never had any offices or employees in Texas. At all relevant times, appellee Cordier was the sole owner, president, and "head trader" of OSI, and appellee Gross was OSI's Director of Marketing and received a share of the company's profits. Additionally, Cordier and Gross were at all relevant times Florida residents domiciled in Florida.

John Jr. became a customer of OSI in 2016 and opened an account with INTL while he was a resident of Florida, although he moved to Texas in September 2017. John Jr. learned about OSI while he was a Florida resident by reading a book on options trading authored by appellees, which book he obtained on his own. After reading the book, John Jr. contacted OSI and requested that it send marketing materials to him in Florida. Appellees met with John Jr. in person on only one occasion, at OSI's headquarters in Tampa, and they never met with John Sr. or Lynn.

After successfully investing with OSI, John Jr. encouraged his parents to open accounts with INTL and become customers of OSI, which they did. Neither John Sr. nor Lynn resided in Texas when they opened their accounts, and John Sr. has never resided or been domiciled in Texas. Lynn allegedly moved to Texas in 2021, but—as found by the trial court— she did not reside and was not domiciled in Texas at any time relevant to appellees' special appearance.

---

[2] Because appellants share a common surname and two of them have the same first name, for clarity we use their first names and the abbreviations "Jr." and "Sr." to distinguish between father and son.

There was no contract between the Valentinis and appellees; rather, the Valentinis were customers by contract of OSI and INTL, both foreign corporations, and appellees did not have any agents working on their behalf in Texas and were not agents themselves of INTL. Although John Jr. made additional investments with INTL after he moved to Texas, he made those on his own volition, and appellees did not induce him to make them.

### The "Market Event" giving rise to the Valentinis' claims

The Valentinis allege that in October and November 2018, appellees departed from both their usual diversified approach to commodities-options trading and their promised "200% rule" and allowed their customers' options accounts to become "over-concentrated in two correlated commodities—natural gas and crude oil."[3] The Valentinis allege that appellees "ignored the warning signs" of dramatic spikes in the price of natural gas and, rather than properly "positioning" the Valentinis' investments in eight to twelve uncorrelated commodities, they instead "rolled up" the Valentinis' positions and "doubled-down," providing appellees with additional commissions but causing the Valentinis' accounts to be "wiped out." They allege damages of $7.5 million to John Jr., $480,000 to John Sr., and $416,000 to Lynn. The parties refer to the extreme volatility in the market price for natural gas that occurred in November 2018 and led to the Valentinis' losses as the "Market Event."

### Procedural history

In November 2022, the Valentinis filed an original, verified petition against appellees for fraud, negligent misrepresentation, breach of fiduciary duty, and negligence related to their trading losses resulting from the Market Event. To support their claims, the Valentinis

---

[3] Appellees' "200% rule" was their recommended strategy to minimize losses by exiting a commodities position ("closing it out") once an option doubles in value from its purchase price.

3

alleged that appellees, among other acts and omissions, (a) failed to disclose pertinent information about appellees' prior investment and performance history (such as regulatory investigations, lawsuits, customer complaints, and previous return rates), their intentions with respect to the Valentinis' investment accounts, and mitigation strategies to avoid catastrophic losses; (b) misrepresented the type and nature of the options-trading strategy they would implement; (c) sent or made false and misleading emails, reports, phone calls, and newsletters to John Jr. while he was a Texas resident; (d) failed to implement risk-management policies and procedures with respect to the Valentinis' portfolios; and (e) excessively traded the Valentinis' accounts to increase their own fees and commissions. Appellees filed a special appearance and original answer subject thereto, after which the parties entered into a Rule 11 agreement concerning specified jurisdictional discovery and deadlines for the parties to amend their respective petition and special appearance.

The Valentinis amended their petition twice and filed a response to appellees' special appearance. Appellees later filed an amended special appearance, to which the Valentinis did not file a response. In April 2023, the trial court conducted a hearing on the amended special appearance and afterwards granted the special appearance and dismissed the Valentinis' claims for want of jurisdiction. At the Valentinis' request, the trial court made findings of fact and conclusions of law, and thereafter John Jr.—not joined by his parents—filed a combined "Motion for New Trial, Motion for Reconsideration, and Motion to Reopen/Consider New Evidence" (Combined Motion). In the Combined Motion, John Jr. argued that the court should grant a new trial under Texas Rule of Civil Procedure 320 because "good cause" exists in that he had "accumulated new evidence that will likely produce a different result" and the parties' counsel had "designated inadequate time to allow for presentation of evidence, including

4

testimony prepared to be delivered at the [special-appearance] hearing."[4] John Jr. attached to his Combined Motion his affidavit and various exhibits. Appellees filed a response to the Combined Motion, to which they attached a declaration of each Cordier and Gross rebutting the "new" evidence attached to the Combined Motion. In their response, appellees argued that although Rule 320 permits a court to grant a motion for new trial for "good cause," *see* Tex. R. Civ. P. 320, the failure of counsel to fully develop available evidence does not constitute good cause, *see White v. Wah*, 789 S.W.2d 312, 320 (Tex. App.—Houston [1st Dist.] 1990, no writ), and the purportedly "new" evidence John Jr. attached to his Combined Motion was not new but had been available to him long before the special-appearance hearing.

At the hearing on the Combined Motion, the trial court allowed John Jr. to play two videos: (1) an excerpt from an "apology video" released shortly after the Market Event depicting Cordier apologizing for the event to a select group of OSI customers, referring to some by name; and (2) an excerpt from Cordier's videotaped deposition in which he conceded that he was a fiduciary to the Valentinis. However, the court did not allow the live testimony of John Jr.[5] After the hearing, the trial court signed an order denying the motion for new trial and motion for reconsideration. The order granted "in part" the motion to reopen/consider new evidence, stating,

---

[4] At the special-appearance hearing, John Jr.'s counsel did not call any witnesses or offer any exhibits.

[5] This hearing was conducted by a different trial judge than the visiting judge who heard and ruled on the special appearance. Neither video appears in the reporter's record from the hearing, and the record does not indicate that any evidence was formally offered or admitted at the hearing; it appears that the videos were merely viewed by the trial court. However, the transcript of Cordier's videotaped deposition was included as an exhibit to the Valentinis' response to appellees' special appearance and was considered by the trial court when it made its ruling on the special appearance. Portions of the apology video were quoted in affidavits attached to appellees' amended special appearance, which affidavits were also considered by the trial court in making its special-appearance ruling.

The documents filed by Plaintiff with his filings after Judge Kennon [the visiting judge who heard and ruled on the special appearance] granted the special appearance are part of the record for appellate purposes, including the evidence shown to the Court at the hearing on June 29, 2023. Otherwise, the Motion to Reopen/Consider New Evidence is DENIED.

The Valentinis thereafter perfected this appeal from the order granting appellees' special appearance and dismissing their claims.

## DISCUSSION

### *Applicable law*

A Texas court has personal jurisdiction over a nonresident defendant if the exercise of personal jurisdiction is authorized by the Texas long-arm statute and is consistent with federal and state constitutional guarantees of due process. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007). The Texas long-arm statute authorizes the exercise of jurisdiction over a nonresident who engages in activities that constitute "doing business" in Texas—including, among other listed activities, "commit[ting] a tort in whole or in part in this state." Tex. Civ. Prac. & Rem. Code § 17.042. However, the long-arm statute's list of activities that constitute "doing business" is not exclusive, and the broad language of the long-arm statute allows Texas courts to exercise personal jurisdiction "as far as the federal constitutional requirements of due process will permit." *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). Thus, a Texas court may exercise personal jurisdiction over a nonresident under the Texas long-arm statute so long as doing so comports with due process. *Spir Star AG v. Kimich*, 310 S.W.3d 868, 872 (Tex. 2010); *see Moki Mac*, 221 S.W.3d at 575 ("[T]he requirements of the Texas long-arm statute are satisfied if an assertion of jurisdiction accords with federal due-process limitations.").

6

"The Due Process Clause [of the Fourteenth Amendment] protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations." *Tabacinic v. Frazier*, 372 S.W.3d 658, 663 (Tex. App.—Dallas 2012, no pet.). The exercise of jurisdiction over a nonresident comports with federal due process when (1) the nonresident has minimum contacts with the forum state, and (2) asserting jurisdiction complies with traditional notions of fair play and substantial justice. *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013); *see International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). "A defendant establishes minimum contacts with a state when it 'purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'" *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338 (Tex. 2009). "The defendant's activities, whether they consist of direct acts within Texas or conduct outside Texas, must justify a conclusion that the defendant could reasonably anticipate being called into a Texas court." *American Type Culture Collections, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002).

A nonresident defendant's minimum contacts with the forum state can give rise to either general or specific jurisdiction. *BMC Software*, 83 S.W.3d at 795. General jurisdiction exists when the defendant has made continuous and systematic contacts with the forum, such that the forum may exercise jurisdiction over the defendant even if the alleged liability does not arise from or relate to those contacts.[6] *Id.* at 796. In contrast, specific jurisdiction exists only if the alleged liability arises out of or is related to the defendant's contact with the forum. *Moki Mac*, 221 S.W.3d at 576. When specific jurisdiction is alleged—as it is here—the focus of the

---

[6] In their prior petition, the Valentinis alleged that the trial court had general jurisdiction over appellees, but they abandoned that allegation in their live, second amended petition and alleged instead only specific jurisdiction.

7

minimum-contacts analysis is on the relationship among the defendant, the forum, and the litigation. *See id.* at 575-76. Therefore, if the court concludes that a nonresident defendant has minimum contacts with Texas by purposefully availing itself of the privilege of conducting activities here, the court must then address whether the defendant's alleged liability arises out of or is related to those contacts. *Id.* at 579. When determining whether a nonresident purposefully availed itself of the privilege of conducting activities in Texas, we consider three factors:

> First, only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person. Second, the contacts relied upon must be purposeful rather than random, fortuitous, or attenuated. Thus, sellers who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to the jurisdiction of the latter in suits based on their activities. Finally, the defendant must seek some benefit, advantage or profit by availing itself of the jurisdiction.

*Moncrief Oil*, 414 S.W.3d at 151 (citation omitted).

The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the provisions of the long-arm statute. *Kelly v. General Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). A defendant challenging a Texas court's personal jurisdiction over it then must negate all jurisdictional bases properly pleaded by the plaintiff. *Id.* If the defendant comes forth with evidence that disproves the plaintiff's jurisdictional allegations, then the plaintiff should present evidence in support of the petition's allegations. *Id.* at 659.

Whether a Texas court has personal jurisdiction over a nonresident defendant is a question of law that we review de novo. *Luciano v. SprayFoamPolymers.com, LLC*, 625 S.W.3d 1, 8 (Tex. 2021). However, trial courts must often resolve questions of fact before deciding jurisdictional issues. *Kelly*, 301 S.W.3d at 658. On appeal, these findings of fact,

8

express or implied, may be challenged for the legal and factual sufficiency of the evidence. *See BMC Software*, 83 S.W.3d at 794. If we determine that the trial court's findings are supported by sufficient evidence, or if the jurisdictional facts are undisputed, we review the trial court's ruling on the special appearance de novo. *Old Republic Nat'l Title Co. Ins. v. Bell*, 549 S.W.3d 550, 560 (Tex. 2018); *Baker Hughes Inc. v. Brooks*, 405 S.W.3d 246, 249 (Tex. App.—Houston [14th Dist.] 2013, pet. denied).

### *Scope of the record*

Before we consider the Valentinis' issues, we first must determine the scope of the record before us in reviewing the legal and factual sufficiency of the trial court's findings and in making our de novo determination thereafter. Specifically, we must determine whether to include in our review the evidence the Valentinis attached to their Combined Motion (the Additional Evidence). The Valentinis extensively rely on the Additional Evidence in making their appellate arguments and contend that we may include it in our review because it "was admitted by the trial court in [its] written order" ruling on the Combined Motion, which order none of the parties challenge. Appellees counter that (1) the Additional Evidence was not before the trial court when it considered and ruled on the special appearance and thus may not be considered in our review, *see Benz Grp. v. Barreto*, 404 S.W.3d 92, 97 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (noting that when trial court denied motion for new trial attaching new evidence, appellate review was limited to evidence before trial court when it dismissed case on grounds of forum non conveniens), and (2) if the Valentinis wanted to complain about the trial court's failure to consider their Additional Evidence as the basis for granting a new trial, they should have filed an appeal from the order denying their motion for new trial, but they did not.

9

We agree with appellees on both points. It is a well-established rule of appellate law that our review is generally limited to the evidence that was before the trial court when it made its challenged ruling. *See Hammer v. Hammer*, No. 03-18-00715-CV, 2021 WL 1916481, at \*2 (Tex. App.—Austin May 13, 2021, no pet.) (mem. op.); *FinServ Cas. Corp. v. Transamerica Life Ins.*, 523 S.W.3d 129, 147 (Tex. App.—Houston [14th Dist.] 2016, pet. denied); *see also Perry Homes v. Cull*, 258 S.W.3d 580, 596 n.89 (Tex. 2008) (in reviewing confirmation of arbitration award, limiting review to record before trial court at time of decision and not considering discovery exhibits filed after arbitration award); *Dougherty-Williams v. Dougherty*, No. 01-13-01087-CV, 2014 WL 2809827, at \*2 n.1 (Tex. App.—Houston [1st Dist.] June 19, 2014, no pet.) (mem. op.) (holding that evidence admitted at hearing on motion for new trial was not properly considered in determining whether trial court erred in granting default judgment in first instance because it was not before court when it granted default).

Although the trial court's order granted in part the motion to reopen/consider new evidence, both the order's language and the context in which it was issued compel the conclusion that such grant was solely to ensure that the evidence viewed at the hearing but not physically attached to the Combined Motion (i.e., the two videos) would be included in the record for appellate purposes.[7] That is, the motion was granted in part to allow the Valentinis to make a record that would allow full review of the trial court's exercise of its discretion, in light of the Additional Evidence, in determining whether to grant a new trial or reconsider its ruling, should they seek to appeal that ruling. However, the Valentinis do not challenge the denial of their motion for new trial, and—more importantly—the trial court did not reconsider the evidence or

---

[7] Despite the order's stated intention, the videos appear not to have been included in the appellate record, for unknown reasons. However, our review of them is not necessary to our disposition of the Valentinis' issues.

10

its ruling on the special appearance, did not make additional fact findings, and did not grant a new trial. The Additional Evidence was therefore not "before" the trial court, and we do not consider it in our review.

Moreover, to consider the Additional Evidence in our review would require us to make fact findings and resolve disputed fact questions, but that is the province of the trial court. *See Bellefonte Underwriters Ins. v. Brown*, 704 S.W.2d 742, 744 (Tex. 1986) ("Findings of fact are the exclusive province of the jury and/or trial court."). The trial court expressly declined to consider the Additional Evidence and thus did not make any findings, express or implied, with respect to the factual allegations contained in the Additional Evidence or in appellees' rebuttal evidence attached to their response. The procedural posture in this case can be distinguished from those in which an appellate court is tasked with reviewing the denial of a special appearance after a final trial on the merits and may consider in its review evidence adduced at trial. *Cf. GJP, Inc. v. Ghosh*, 251 S.W.3d 854, 871 (Tex. App.—Austin 2008, no pet.).

We conclude that the Additional Evidence is not within the scope of our review and, to the extent that the Valentinis rely on any of it—unless already included in a response or other filing when the trial court made its special-appearance ruling—we do not consider it or the Valentinis' arguments based thereon.

### *Sufficiency of evidence supporting the challenged fact findings*

We next address the Valentinis' third issue, in which they challenge the legal and factual sufficiency of the evidence supporting certain portions of the trial court's findings of fact. When an appellant attacks the legal sufficiency of an adverse finding on an issue on which it did not have the burden of proof, the appellant must demonstrate on appeal that there is no evidence to support the adverse finding. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983). In

11

determining whether there is legally sufficient evidence to support the challenged finding, we examine the record for evidence and inferences that support the finding, while disregarding all contrary evidence and inferences. *See City of Keller v. Wilson*, 168 S.W.3d 802, 828 (Tex. 2005). We must consider evidence favorable to the finding if a reasonable factfinder could, and disregard evidence contrary to the finding unless a reasonable factfinder could not. *Id.* When an appellant attacks the factual sufficiency of an adverse finding on an issue on which it did not have the burden of proof, the appellant must demonstrate that the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). In conducting our review, we consider and weigh all the evidence in the record, *id.*, and we must not merely substitute our judgment for that of the trier of fact, *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). Employing these standards, we will address each challenged finding in turn.

*Finding No. 5*

The challenged portions of Finding No. 5 recite that (1) "Defendants were either unaware of or, at best that it is unclear whether Defendants were aware that [John] Jr. resided in Texas beginning in September 2017, or that Defendant Cordier was aware of [John] Jr.'s location during their phone calls after September 2017, which [John Jr.] initiated using a phone with a Florida area code," and (2) "Plaintiffs . . . submitted no evidence that Defendant Cordier knew [John] Jr. was located in Texas at the time any of the calls took place." The Valentinis argue that as to the first portion of the finding, Cordier's declarations are "contradictory" and thus cannot support the finding that he was not aware that John Jr. had moved to Texas. They attempt to rebut the second portion with the Additional Evidence attached to their Combined Motion, but it

12

was not before the trial court at the relevant time and is irrelevant to our review.[8]  We thus consider the sufficiency of the evidence supporting only the first portion of the finding.

After reviewing the record properly before us, we conclude that the evidence is legally and factually sufficient to support the findings that appellees were unaware that John Jr. had moved to Texas and that Cordier was unaware of John Jr.'s location during their phone calls. It is undisputed that John Jr. resided in Boca Raton, Florida, when he became a customer of OSI and initially invested with INTL in 2016; that he maintained a phone number with a Florida area code throughout the relevant period; and that his nickname in the OSI office was "Boca." Appellees' undisputed evidence indicates that Cordier continued to call John Jr. "Boca" even after the Market Event.  Further, we disagree with the Valentinis' contention that Cordier's declarations about his lack of knowledge about John Jr.'s whereabouts during their phone calls are "contradictory."  Rather, a reasonable factfinder could read the declarations together and find no inconsistency.[9]  Although the Valentinis cite the declarations of Rosemary Veasey, OSI's office manager and marketing assistant, in which Veasey is "notabl[y] silent" about whether Cordier and Gross knew that John Jr. had moved to Texas—despite Cordier's statement in the apology video that they talked about John Jr. "a lot" at OSI's small office of four people—such evidence does not weigh so heavily against the trial court's finding as to render it clearly wrong and manifestly unjust.  We overrule the Valentinis' challenge to Finding No. 5.

---

[8] The Valentinis also challenge the sufficiency of evidence supporting the first portion of the recited finding—that John Jr. initiated the phone calls—but, again, they rely solely on the Additional Evidence to support their argument.

[9] In one of his declarations, Cordier averred that he "did not know where [John Jr.] was located during any of" their phone calls.  In a supplemental declaration, Cordier averred that he "was unaware of [John Jr.'s] location during" their phone calls and "did not know [John Jr.] was in Texas when some of them took place."

13

*Finding No. 6*

The Valentinis challenge Finding No. 6's recitation that "Plaintiffs did not submit any evidence showing Defendants communicated with them in writing or sent them any marketing materials in any manner which directed their activities towards the state of Texas." The Valentinis support this argument not with citations to the record but with the broad assertion that "Appellants' evidence can be seen in the record." It is not the task of the appellate court to scour the record to find evidence supporting appellants' claims, and appellants waive error if they fail to support their contentions with citations to the record. *In re Marriage of Duncan*, No. 13-22-00249-CV, 2024 WL 484676, at *1 (Tex. App.—Corpus Christi–Edinburg Feb. 8, 2024, no pet.) (mem. op.); *Barnes v. University Fed. Credit Union*, No. 03-10-00147-CV, 2013 WL 1748788, at *12 (Tex. App.—Austin Apr. 18, 2013, no pet.) (mem. op.); *see also* Tex. R. App. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."). We thus overrule the Valentinis' challenge to Finding No. 6.

*Finding No. 7*

The Valentinis contend that the recitation in Finding No. 7 that the "additional investments allegedly made by [John] Jr. after he moved to Texas have no substantial connection to the personal jurisdictional analysis . . . as it is Defendants' contacts with Texas that are at issue" is "clear error." They argue that "where [appellees] were receiving money from" is "crucially" relevant to the question of where appellees were "directing their activities." While that may be true under applicable circumstances, the Valentinis do not identify any evidence demonstrating that appellees directed their activities towards Texas or its residents. In other words, the undisputed evidence and other unchallenged findings demonstrate that the Valentinis'

relationship with appellees was established before John Jr. allegedly became a Texas resident; that John Jr. unilaterally chose to invest further funds with OSI after he allegedly moved to Texas; and that appellees did not solicit the additional investments, communicate with John Jr. with the awareness that he was residing in Texas, or make any commissions off the additional investments. Given these undisputed or already established facts, we agree with the trial court's conclusion that John Jr.'s additional investments have no substantial connection to the jurisdictional analysis.

The trial court's conclusion is consistent with applicable caselaw addressing what constitutes minimum contacts, specifically that it is the *defendant's* actions directed towards Texas (or lack thereof) rather than the *plaintiff's* actions directed from or within Texas that are relevant. *See, e.g.*, *Moncrief Oil*, 414 S.W.3d at 151. We overrule the Valentinis' challenge to Finding No. 7.

*Finding No. 8*

The Valentinis contend that Finding No. 8 is unsupported by the evidence to the extent that it found that (1) the statement "Good luck in Texas" in Cordier's apology video was "forward-looking" rather than referencing Cordier's alleged awareness that John Jr. had already moved to Texas, and (2) "the evidence submitted by Cordier confirms that he was unaware that [John] Jr. had already allegedly moved to Texas." Having already addressed the latter portion of this finding, we address only the first portion. The Valentinis cite the following evidence to rebut the finding that Cordier's "good luck" statement was forward-looking: elsewhere in the video, Cordier mentioned that "they frequently talked about [John Jr.] at the office and that he enjoyed his evening conversations with [John Jr.]." The Valentinis also contend that because the trial court "never actually saw the apology video before it made its ruling" (and only read

15

portions of the video that were transcribed in affidavits referencing the video), it could not properly have weighed the video or evaluated Cordier's credibility about his awareness of John Jr.'s whereabouts or new alleged residence in Texas. However, yet again, the video itself was not before the trial court when it ruled on the special appearance, and we may not consider it in our review. We overrule the Valentinis' complaint concerning Finding of Fact No. 8.

***Specific jurisdiction over appellees as to John Jr.'s claims***

In their first issue, the Valentinis argue that the trial court erred in determining that Texas has no specific jurisdiction over John Jr.'s claims. They argue that appellees were "doing business in Texas" and met the minimum-contacts requirement by the following alleged jurisdictional contacts with Texas: (1) accepting and managing the investments of a Texas resident (John Jr.), (2) advising John Jr. through "frequent communications directed towards" Texas, and (3) sending marketing materials "directly to" John Jr. in Texas. However, the only evidence they cite to support these contentions is the Additional Evidence, which is not properly before us in making our de novo determination.

Furthermore, the relevant findings made by the trial court, including those challenged by the Valentinis and which we have already upheld, support the conclusion that appellees were not doing business in Texas at the relevant time:

- appellees were unaware that John Jr. had moved to Texas;

- in his phone conversations with John Jr., Cordier was unaware of John Jr.'s location;

- Gross did not have any conversations with John Jr. after John Jr.'s move to Texas;

- appellees did not communicate in writing with or send to John Jr. any marketing materials while he was in Texas to induce him to make additional investments with INTL; and

16

- Cordier's apology video wishing John Jr. "good luck in Texas" was forward-looking and confirmed that he was unaware that John Jr. had already moved to Texas; in any event, the apology video was released after the Market Event and is thus irrelevant to the jurisdictional analysis.

After finding that appellees negated every alleged contact they had with Texas, the trial court concluded that the Valentinis did not present any additional evidence linking appellees to Texas, and we have determined that the trial court did not err in such observation. We, accordingly, conclude that appellees had no minimum contacts with Texas and did not otherwise purposefully avail themselves of the privilege of conducting activities within Texas as to invoke the benefits and protections of its laws. *See Retamco Operating*, 278 S.W.3d at 338. Having so concluded, we need not consider the second prong of the specific-jurisdiction analysis: whether appellees' alleged liability arises out of or is related to the purported minimum contacts.[10] *See Moki Mac*, 221 S.W.3d at 579.

### *Specific jurisdiction over appellees as to John Sr.'s and Lynn's claims*

The Valentinis contend in their second issue that the trial court erred in finding there was no specific jurisdiction over appellees with respect to the claims of John Sr. and Lynn. Having already determined that the trial court properly granted the special appearance as to John Jr.'s claims, we likewise conclude that the trial court properly granted the special appearance as to John Sr.'s and Lynn's claims. Based on the undisputed facts and unchallenged findings that neither John Sr. nor Lynn resided in or was domiciled in Texas at the times relevant

---

[10] We also need not address the Valentinis' arguments asserting that the theories of alter ego and individual liability for a corporate employee's own tortious acts (and thus inapplicability of the "fiduciary-shield doctrine") affect the jurisdictional analysis on this record. The Valentinis have raised those theories in an attempt to impute OSI's jurisdictional contacts with Texas to Cordier and Gross in their individual capacities. But even assuming that either theory applies, appellees negated each alleged basis of jurisdictional minimum contacts—whether such contacts be attributed to Gross and Cordier individually or to OSI itself as a corporation.

to the rise of their claims, as a matter of law appellees' alleged minimum contacts were not—and could not have been—directed towards Texas, nor can appellees be said to have purposefully availed themselves of the privilege of conducting activities in this state. *See Moncrief Oil*, 414 S.W.3d at 151; *Retamco Operating*, 278 S.W.3d at 338. We overrule the Valentinis' second issue.

## CONCLUSION

We hold that the trial court did not err in granting appellees' special appearances and in, accordingly, dismissing the Valentinis' claims for lack of jurisdiction. We affirm the trial court's judgment.

_____

Karin Crump, Justice

Before Justices Triana, Crump, and Ellis

Affirmed

Filed: February 6, 2025

18